[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13884
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-01719-SDM-MAP; 8:09-cr-00052-SDM-MAP-2


DAVID L. BULLOCK,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 8, 2016)


Before JORDAN, JULIE CARNES, and EDMONDSON, Circuit Judges.

PER CURIAM:

This appeal is based on a contention of lost mail -- mail from a prisoner to a court and never received by the court. David Bullock, proceeding pro se, appeals the district court's dismissal of his 28 U.S.C. § 2255 motion as untimely. Reversible error has been shown; we vacate the dismissal and remand for further proceedings.

Bullock pleaded guilty to conspiracy to possess with intent to distribute cocaine base. The court sentenced Bullock to 262 months' imprisonment and entered final judgment on 1 July 2009. Bullock filed no direct appeal. Bullock later filed a section 2255 motion to vacate his conviction; the motion was first received by the district court on 3 August 2010.

The district court dismissed Bullock's motion as barred by the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act. See 28 U.S.C. § 2255(f). We granted a certificate of appealability ("COA") on whether Bullock's section 2255 motion was timely filed under the "prison mailbox rule."[1]

---

[1] To the extent Bullock argues that his section 2255 motion is timely under section 2255(f)(4), that issue is outside the scope of this appeal. See 28 U.S.C. § 2253(c)(3) (limiting appellate review to the issues specified in the COA). Moreover, to the extent Bullock now seeks to expand the scope of the COA, we deny the request as untimely. See Tompkins v. Moore, 193 F.3d 1327, 1332 (11th Cir. 1999) (arguments raised in the appellate brief "will not be considered as a timely application for expansion of the [COA]" and will not be reviewed on appeal).

In section 2255 proceedings, we review de novo questions of law and review for clear error findings of fact. Jeffries v. United States, 748 F.3d 1310, 1313 (11th Cir. 2014).

Generally speaking, a prisoner must file his section 2255 motion within one year of the final judgment. See 28 U.S.C. § 2255(f). Because Bullock filed no direct appeal, his judgment of conviction became final on 16 July 2009. See Akins v. United States, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000) (a judgment of conviction becomes final when the time for filing a direct appeal expires). Bullock was thus required to file his section 2255 motion by 16 July 2010.

Under the "prison mailbox rule," a pro se prisoner's section 2255 motion is deemed filed on the date the prisoner delivers the motion to prison authorities for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). The mailbox rule may be applied even when a prisoner's pleading is "lost" and never received by the district court. See Allen v. Culliver, 471 F.3d 1196, 1198 (11th Cir. 2006).

"Absent evidence to the contrary, we assume that a prisoner delivered a filing to prison authorities on the date that he signed it." Jeffries, 748 F.3d at 1314; see also Washington, 243 F.3d at 1301 (accepting the signature date on the pleading as the date of delivery to prison authorities where the government "offered no evidence to support a conclusion that the motion was delivered at a

3

later date."). "The burden is on the Government to prove the motion was delivered to prison authorities on a date other than the date the prisoner signed it." Jeffries, 748 F.3d at 1314.

Bullock's pertinent section 2255 motion is itself unsigned and undated, but documents accompanying the motion -- including the certificate of service for Bullock's brief in support of the motion and Bullock's sworn affidavit in support of his claims -- are signed and are dated 16 June 2010. (In an affidavit, Bullock declares that he first delivered his section 2255 motion to prison authorities for mailing on 16 June 2010, after having prepaid first class postage.) When Bullock later learned that the district court had no record of his original motion, Bullock filed a second document: a "Notice of Resubmitting Motion Pursuant to Title 28 U.S.C. § 2255" -- signed and dated on 30 July 2010 -- together with a copy of Bullock's originally filed section 2255 motion. The district court received these resubmitted documents on 3 August 2010.

Given this evidence, the burden was on the government to prove that Bullock delivered his initial section 2255 motion to prison authorities -- if at all -- on a date other than on 16 June. See Jeffries, 748 F.3d at 1314; see also Daniels v. United States, 809 F.3d 588, 589 (11th Cir. 2015) (pursuant to Rule 3(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts, a prisoner may demonstrate that his motion is timely by submitting an unsworn

4

declaration that "set[s] forth the date of deposit and state[s] that first-class postage has been prepaid.").[2]

No evidentiary hearing was conducted in district court: no one testified in person before the court.  The government, however, submitted three pieces of evidence in an attempt to contradict Bullock's assertion that he first delivered his section 2255 motion to prison authorities for mailing on 16 June.  First, the government produced affidavits from mailroom supervisors at Bullock's prison about routine mailroom procedures.  In pertinent part, the prison maintains logs only for outgoing certified mail; not for "legal/special mail" or "general mail." The outgoing certified mail logs show no certified mail sent by Bullock during the months of June, July, or August 2010.  (Bullock does not claim that he used certified mail.)  About "legal/special mail," the prison's policy is to stamp the back of the envelope with the date of receipt in the mailroom.  And all mail delivered to the prison mailroom -- including certified mail, "legal/special mail" or "general mail" -- is taken to the post office for mailing within 24 hours of receipt.

---

[2] In the light of our precedent and the plain language of Rule 3(d), we decline the government's invitation to adopt a higher evidentiary standard -- similar to that adopted by the Seventh Circuit -- for prisoners alleging "lost mail" claims. See Allen, 471 F.3d at 1198-99 (in the context of an alleged lost notice of appeal, the government bears the burden of proof once the prisoner has -- in compliance with identical language in Fed.R.App.P. 4(c) -- provided a declaration "set[ting] forth the date of the deposit and stat[ing] that first class portage has been prepaid."); but see Ray v. Clements, 700 F.3d 993, 1011-12 (7th Cir. 2012) (to shift the burden to the government to show untimeliness, a prisoner must first submit a sworn declaration attesting to "the who, what, when, where, how, and why of his alleged delivery to a prison official" in addition to "some other corroborating evidence").

Second, the government produced a copy of the envelope received by the district court containing Bullock's resubmitted section 2255 motion. The front of the envelope is labeled "Legal Mail" and the back of the envelope is date-stamped 30 July 2010, consistent with the prison's policy for handling "legal/special mail." The envelope is post-marked 2 August 2010.

The third piece of evidence the government relies on are records of Bullock's commissary purchases between 2 June and 23 August 2010. The commissary receipts demonstrate that Bullock purchased stamps and a copy card only once during the pertinent period: on 29 July 2010.

We agree with the district court that the government's evidence supports a finding that Bullock delivered some document to prison authorities for mailing on 30 July 2010. But that evidence is fully consistent with Bullock's contention that he <u>resubmitted</u> his section 2255 motion on 30 July.

Nothing in the government's evidence contradicts Bullock's contention that he <u>also</u> delivered originally his section 2255 motion to prison authorities on 16 June. That Bullock purchased no stamps or copy cards from the commissary within the two weeks leading up to 16 June -- by itself -- falls short of the evidence necessary to overcome the presumption that Bullock's motion was delivered to prison authorities on 16 June. Cf. <u>Jeffries</u>, 748 F.3d at 1315-16 (government satisfied burden of proving untimely filing by introducing testimony about prison

6

mailroom practices, evidence showing no prison logbook entry on the alleged date of delivery to the prison mailroom, the prisoner's lack of diligence in following up on his alleged pleading, and where the district court found prisoner's testimony lacked credibility).  Nothing evidences that the commissary is the only source available for prisoners to obtain stamps and copy cards or that Bullock purchased no stamps or copy cards before 2 June.

In a case like this one, bare evidence of routine mail procedure is insufficient to overcome a prisoner's sworn statement on when he delivered a specific legal document to proper authorities.  On this record, the government <u>has</u> failed to satisfy its burden of proof.  We vacate the dismissal and remand for further proceedings.[3]

VACATED AND REMANDED.

---

[3] In dismissing Bullock's motion as untimely and finding facts, the district court relied almost exclusively on this Court's unpublished decision in <u>Natson v. United States</u>, 494 F. App'x 3 (11th Cir. 2012) (unpublished).  We disagree with the district court's determination that Bullock's case is factually indistinguishable from <u>Natson</u>.  First and foremost, <u>Natson</u> involved no allegation of "lost" mail.  Instead, Natson contended that he delivered timely his section 2255 motion to prison authorities but that the prison failed to process his mail until after the expiration of the limitation period.  And in <u>Natson</u>, certified mail was involved.  This Court concluded that the government's evidence -- which included testimony about routine mailroom procedures, the post-mark date on Natson's motion, and records of other certified mail having been delivered successfully to the post office within the pertinent time frame -- was sufficient to establish an untimely filing.

The government in this case presented some -- but not all -- of the same kinds of evidence involved in <u>Natson</u> (testimony about routine mailroom procedures).  But the issue here is <u>not</u> whether the evidence presented by the government is an acceptable form of proof; it is acceptable in form but legally insufficient in weight.  Nor does this case turn on the date on which mail actually received by the district court was in fact delivered to prison authorities.  Instead, the issue in this case is whether the government's evidence is sufficient to rebut Bullock's contention that he delivered timely a section 2255 motion to prison authorities, but that the motion was never delivered to the court.

7